## UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRANCISCO MORA, ) | |
| ) | |
|        Plaintiff, ) | Case No. _____ |
| ) | |
|    v. ) | JURY TRIAL DEMANDED |
| ) | |
| AMAG PHARMACEUTICALS, INC., GINO ) | |
| SANTINI, SCOTT MYERS, JOHN A. ) | |
| FALLON, PAUL FONTEYNE, DAVID ) | |
| JOHNSON, KATHRINE O'BRIEN, ANNE M. ) | |
| PHILLIPS, DAVEY S. SCOON, and JAMES ) | |
| SULAT, ) | |
| ) | |
|       Defendants. ) | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, Francisco Mora, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.     This is an action brought by Plaintiff against AMAG Pharmaceuticals, Inc. ("AMAG" or the "Company")  and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with AMAG, the "Defendants") for their violations of Sections 14(d)(4), 14(e), and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), respectively, and United States Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9").  Plaintiff's claims arise in connection with the proposed tender offer by Covis Mergerco Inc. ("Merger Sub"), an indirect wholly-owned subsidiary of Covis Group S.à r.l. ("Covis") to acquire AMAG (the "Tender Offer").

Plaintiff also asserts a claim against the Individual Defendants for breaching their fiduciary duty of candor/disclosure under state law.

2.      On October 1, 2020, AMAG entered into an agreement and plan of merger with Covis and Merger Sub (the "Merger Agreement"), whereby Merger Sub will acquire all outstanding shares of the Company's common stock (the "Proposed Transaction").  As a result, AMAG shareholders will be entitled to receive $13.75 for each share of AMAG common stock they own (the "Offer Price").

3.      On October 15, 2020, in order to convince AMAG public common stockholders to tender their shares, the Board authorized the filing of a materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement (the "Recommendation Statement") with the SEC.

4.      In particular, the Recommendation Statement contains materially incomplete and misleading information concerning: (i) the financial projections for AMAG for fiscal years 2020 through 2040; and (ii) the valuation analyses performed by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs") in connection with the Proposed Transaction.

5.      The Tender Offer is scheduled to expire at 12:01 a.m. Eastern Time, on November 12, 2020 (the "Expiration Time").  Therefore, it is imperative that the material information that has been omitted from the Recommendation Statement is disclosed to the Company's shareholders prior to the Expiration Time, so AMAG shareholders can properly determine whether to tender their shares.

6.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(d)(4), 14(e), and 20(a) of the Exchange Act and Rule 14d-9. Plaintiff seeks to enjoin Defendants from closing the Tender Offer or taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to AMAG's public common stockholders sufficiently in advance of the Expiration Time or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants'

violations of the Exchange Act.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the

1934 Act because the claims asserted herein arise under Sections 14(d)(4), 14(e), and 20(a) of the

Exchange Act and Rule 14d-9.

8.      Personal jurisdiction exists over each Defendant either because the Defendant

conducts business in or maintains operations in this District, or is an individual who is either present

in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to

render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional

notions of fair play and substantial justice.  "Where a federal statute such as Section 27 of the

[Exchange] Act confers nationwide service of process, the question becomes whether the party has

sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*,

764 F.2d 1309, 1315 (9th Cir. 1985).  "[S]o long as a defendant has minimum contacts with the

United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal

district court." *Id.* at 1316.

9.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. §

78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact

business in this District.  Indeed, the Company's common stock trades on the NasdaqGS, which is

headquartered in this District.  *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir.

2003) (collecting cases).  Further, AMAG's financial advisor for the Proposed Transaction, Goldman

Sachs is located in this District at 200 West St., New York, NY 10282.

## PARTIES

10.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner

of AMAG common stock.

11.     Defendant AMAG is a public company incorporated under the laws of Delaware with principal executive offices located at 1100 Winter Street, Waltham, MA.  The Company's common stock is traded on the NasdaqGS under the ticker symbol "AMAG."

12.     Defendant Gino Santini is, and has been at all relevant times, a director of the Company and Chairman of the Board.

13.     Defendant Scott Myers is, and has been at all relevant times, a director of the Company and its President and Chief Executive Officer.

14.     Defendant John A. Fallon, M.D. is, and has been at all relevant times, a director of the Company.

15.     Defendant Paul Fonteyne is, and has been at all relevant times, a director of the Company.

16.     Defendant David Johnson is, and has been at all relevant times, a director of the Company.

17.     Defendant Kathrine O'Brien is, and has been at all relevant times, a director of the Company.

18.     Defendant Anne M. Phillips, M.D. is, and has been at all relevant times, a director of the Company.

19.     Defendant Davey S. Scoon, CPA is, and has been at all relevant times, a director of the Company.

20.     Defendant James Sulat is, and has been at all relevant times, a director of the Company.

21.     The Defendants identified in paragraphs 12 through 20 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with AMAG, the "Defendants."

4

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

22.     AMAG is a pharmaceutical company that develops, manufactures, and commercializes therapeutics for maternal and women's health, and anemia management in the United States. The Company markets Feraheme (ferumoxytol), an intravenous iron replacement therapeutic agent for the treatment of iron deficiency anemia in adult patients who have intolerance to oral iron or have had unsatisfactory response to oral iron, as well as patients who have chronic kidney disease; Makena, a hydroxyprogesterone caproate injection to reduce the risk of preterm birth in women pregnant with a single baby who have a history of singleton spontaneous preterm birth; Intrarosa (prasterone) vaginal insert steroid for the treatment of dyspareunia due to menopause; and Vyleesi (bremelanotide), an auto-injector device for the treatment of hypoactive sexual desire disorder in pre-menopausal women. Its product candidates also include AMAG-423 (ovine), an antibody fragment, which is in Phase 2b/3a trial for the treatment of severe preeclampsia in pregnant women; and Ciraparantag, an anticoagulant reversal agent that is in planned Phase 2b trial for the treatment of novel oral anticoagulants or low molecular weight heparin. The Company was founded in 1981.

23.     Covis is headquartered in Luxembourg with operations in Zug, Switzerland and is a global specialty pharmaceutical company that markets therapeutic solutions for patients with life-threatening conditions and chronic illnesses.

24.     According to the October 1, 2020, joint press release announcing the Proposed Transaction:

**COVIS GROUP ANNOUNCES AGREEMENT TO ACQUIRE AMAG PHARMACEUTICALS**

**Luxembourg, Zug, Switzerland and Waltham, Mass. (October 1, 2020)–** Covis Group S.à r.l. ("Covis") and AMAG Pharmaceuticals, Inc. (NASDAQ: AMAG) today announced that they have entered into a definitive agreement under which Covis will acquire AMAG for $13.75 per share in cash, or approximately $498 million on a fully diluted basis and approximately $647 million on an enterprise basis, including debt obligations expected to be assumed or repaid net of cash. The offer represents a premium of approximately 46%

to the closing price of AMAG's common stock on September 30, the last full trading day prior to the announcement.

Commenting on the transaction, Covis CEO Michael Porter said, "AMAG's category leading treatments are strong strategic complements to our existing therapeutic portfolio. Through this combination, we believe we will be able to unlock value for all of our stakeholders, employees and patients through the effective and efficient management of these products, coupled with our two companies' longstanding commitment to expanding patient access to therapy and putting patient interests first. At Covis, we never lose sight that our patients are our paramount concern. We look forward to engaging with the talented team at AMAG as we work together to plan the integration of our two organizations."

AMAG CEO Scott Myers added, "In the beginning of 2020, AMAG announced that the company had undertaken a strategic review of our product portfolio and strategy, the guiding principles of which included driving near- and long-term profitability and enhancing shareholder value. This strategic review resulted in the company pursuing and accomplishing the divestiture of its women's health assets, and other efforts to streamline and strengthen the core business to position AMAG for the future. Following this initial transformation, our Board of Directors and management team, together with independent legal and financial advisors, thoroughly evaluated the transaction with Covis as well as other strategic options and concluded that it represents the most compelling opportunity for shareholders, providing them certain and immediate cash value. We believe Covis is the right partner for AMAG, especially in light of Covis' shared commitment to ensuring that our therapies will reach patients in need. We are confident the work we've done will continue to thrive under Covis' leadership."

The completion of the tender offer is subject to customary closing conditions, including the tender of at least a majority of the outstanding shares of AMAG's common stock, the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, and other customary conditions. Following the successful completion of the tender offer, an indirect, wholly owned subsidiary of Covis will merge with AMAG (the "merger") and the outstanding AMAG shares not tendered in the tender offer will be converted into the right to receive the same $13.75 per share in cash paid in the tender offer. The tender offer is expected to commence in October 2020. Covis plans to finance the transaction with cash on hand, and a combination of committed debt and equity financing. There is no financing condition to the obligations of Covis to consummate the transaction.

As part of the transaction, Covis intends to enter into an amended and restated credit facility with its current lenders (the "Lenders"), pursuant to which the Lenders will provide up to a $460 million senior secured incremental term loan and a $55 million secured revolver (the "Covis Debt Financing"). The proceeds from the Covis Debt Financing, plus equity commitments from Covis' equity sponsor, will be used to pay the cash purchase price for the transaction and repay any of the existing AMAG debt that is not assumed. The Covis Debt Financing amount will be added to Covis' current $450 million term loan facility with the Lenders. As the merger will result in a change of control under the terms of AMAG's Indenture governing its 3.25% Convertible Senior Unsecured Notes Due 2022 (the "Convertible Notes"), the holders of the Convertible Notes will have the right to put at par the Convertible Notes held by them for a period of twenty business days following the closing of the merger.

All Board members and executive officers of AMAG have agreed to tender their shares in favor of the transaction. The transaction, which has been unanimously approved by the Board of Directors of each company, is expected to close in November 2020, pending Hart-Scott-Rodino (HSR) approval and the conditions to the tender offer being satisfied.

(Emphasis in original).

25.     The Offer Price represents inadequate compensation for AMAG shares. Recommendation Statement at 1, 6, 21.

26.     Therefore, it is imperative that AMAG shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Recommendation Statement, which is necessary for shareholders to properly exercise their corporate suffrage rights and make an informed decision on whether to tender their shares in favor of the Proposed Transaction.

**The Recommendation Statement Omits Material Information**

27.     On October 15, 2020, Defendants filed a materially incomplete and misleading Recommendation Statement with the SEC.  The Individual Defendants were obligated to carefully review the Recommendation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Recommendation Statement misrepresents or omits material information that is necessary for AMAG's public common stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(d)(4), 14(e), and 20(a) of the Exchange Act and Rule 14d-9.  Thus, the Recommendation Statement should be amended.

28.     First, the Recommendation Statement fails to disclose information regarding AMAG's financial projections.  Specifically, it omits AMAG management's estimates of research and development costs and corporate costs required to support existing products and for AMAG to remain a standalone company – figures used to calculate AMAG's Total Operating Expenses. Recommendation Statement at 33.

29.     If a Recommendation Statement discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak, but liability for not having spoken enough.  With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the

factual basis as then known—but it may not choose half-truths. *See Campbell v. Transgenomic, et al.*, No. 18-2198 (8th Cir., March 1, 2019) (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases).

30.     Unlike poker where a player must conceal his unexposed cards, the object of a recommendation statement is to put all of one's cards on the table face-up. In this case, only some of the cards were exposed—the others were concealed. If a recommendation statement discloses financial projections and valuation information, such projections must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. Accordingly, Defendants have disclosed some of the information related to the projections relied upon by Goldman Sachs, but have omitted crucial information regarding the line items underlying Total Operating Expenses, which renders the Recommendation Statement misleading.

31.     Second, the Recommendation Statement omits material information regarding Goldman Sachs' financial analyses with respect to the Proposed Transaction.

32.     The Recommendation Statement states that Goldman Sachs, in connection with rendering its financial analyses, reviewed among other things, "certain publicly available research analyst reports for the Company," yet the Recommendation Statement omits the names of the research analysts selected. Recommendation Statement at 24.  In addition, the Recommendation Statement states that Goldman Sachs reviewed "NOL Forecasts" in rendering its fairness opinion, but yet no NOL forecasts are disclosed. *Id.*

33.     In summarizing the *Illustrative Sum-of-the Parts Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) the inputs and assumptions underlying the discount rates of 10.5% to 12.5% (reflecting estimates of the Company's weighted average cost of

capital); (ii) the net debt of the Company as of June 30, 2020; (iii) the total number of fully diluted outstanding shares of the Company as of September 25, 2020; (iv) a beta for the Company; and (v) the range of illustrative equity values derived for the Company. *Id.* at 26-27.

34.     These key inputs are material to AMAG shareholders, and their omission renders the summary of Goldman Sachs' Discounted Cash Flow Analysis incomplete and misleading.  As one highly-respected law professor explained regarding these crucial inputs, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…"  *Id.*  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value.  For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. *This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion* **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices**. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added).   Without the above-mentioned information, AMAG's shareholders cannot evaluate for themselves the reliability of Goldman Sachs' Discounted Cash Flow Analysis, make a meaningful determination of whether the implied equity value ranges reflect the true value of the Company or were the result of an unreasonable judgment by Goldman Sachs, and make an informed decision regarding whether to tender their shares in favor of the Proposed Transaction.

35.     Similarly, Goldman Sachs failed to disclose the following in its *Illustrative Present Value of Future Share Price Analysis*: (i) the inputs and assumptions underlying the applied range of

illustrative one-year forward EV/Revenue multiples of 2.0x to 3.0x; (ii) the Company's forecasted net debt for each of the fiscal years 2021 to 2024; (iii) the inputs and assumptions underlying the CAPM components used to calculate the illustrative discount rate of 11.6% (reflecting an estimate of the Company's cost of equity); and (iv) the beta for the Company used to calculate the illustrative discount rate. Recommendation Statement at 27.

36.     Additionally, Goldman Sachs' *Selected Precedent Transactions Analysis* does not disclose the inputs and assumptions underlying the applied range of enterprise value to revenue multiples of 2.0x to 3.0x to the Company's next 12-months revenue as of June 30, 2020. *Id.*

37.     With respect to the *Premia Analysis*, the Recommendation Statement does not disclose the all-cash acquisition transactions reviewed and analyzed by Goldman Sachs. *Id.*  More importantly, the Recommendation Statement omits the individual premia observed in each of the selected all-cash acquisitions. *Id.*

38.     Defendants' failure to provide the foregoing material information renders the statements in the Recommendation Statement false and/or materially misleading.

39.     In sum, the omission of the above-referenced information renders the Recommendation Statement materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the Expiration Date concerning the Tender Offer, Plaintiff will be unable to make an informed decision concerning whether to tender his shares, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

### COUNT I

### (Against All Defendants for Violation of Section 14(e) of the Exchange Act)

40.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

41.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading…" 15 U.S.C. §78n(e).

42.     Defendants violated § 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in connection with the Tender Offer.  Defendants knew or recklessly disregarded that the Recommendation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

43.     The Recommendation Statement was prepared, reviewed, and/or disseminated by Defendants.  It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer and the intrinsic value of the Company.

44.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(e).  The Individual Defendants were therefore reckless, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Recommendation Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

45.     The omissions and incomplete and misleading statements in the Recommendation

Statement are material in that reasonable stockholders would consider them important in deciding whether to tender their shares.  In addition, a reasonable investor would view the information identified above which has been omitted from the Recommendation Statement as altering the "total mix" of information made available to stockholders.

46.     Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.  Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

47.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the Expiration Time.

**COUNT II**

**(Against all Defendants for Violations of Section 14(d)(4) of the Exchange Act
and SEC Rule 14d-9, 17 C.F.R. § 240.14d-9)**

48.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49.     Defendants have caused the Recommendation Statement to be issued with the intention of soliciting stockholder support of the Proposed Transaction.

50.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.  Specifically, Section 14(d)(4) provides that:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the

Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

51.      SEC Rule 14d-9(d), which was adopted to implement Section 14(d)(4) of the Exchange

Act, provides that:

> Information required in solicitation or recommendation. Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof.

52.      In accordance with Rule 14d-9, Item 8 of a Schedule 14D-9 requires a Company's

directors to:

> Furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

53.      The omission of information from a recommendation statement will violate Section

14(d)(4) and Rule 14d-9(d) if other SEC regulations specifically require disclosure of the omitted

information.

54.      The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it

omits material facts, including those set forth above, which renders the Recommendation Statement

false and/or misleading.  Defendants knowingly or with deliberate recklessness omitted the material

information identified above from the Recommendation Statement, causing certain statements therein

to be materially incomplete and therefore misleading.  Indeed, while Defendants undoubtedly had

access to and/or reviewed the omitted material information in connection with approving the Proposed

Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain

portions of the Recommendation Statement materially incomplete and therefore misleading.

55.      The misrepresentations and omissions in the Recommendation Statement are material

to Plaintiff, and Plaintiff will be deprived of his entitlement to make a fully informed decision if such

misrepresentations and omissions are not corrected prior to the Expiration Date.

## COUNT III

**(Against all Defendants for Violations of Section 20(a) of the Exchange Act)**

56.      Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

57.      The Individual Defendants acted as controlling persons of AMAG within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of AMAG, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

58.      Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

59.      In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Recommendation Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing this document.

60.      In addition, as the Recommendation Statement sets forth at length, and as described

herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Recommendation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

61.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

62.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

63.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT IV**

**(Against the Individual Defendants for Breach of Fiduciary Duty of Candor/Disclosure)**

64.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

65.     By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Recommendation Statement did not omit any material information or contain any materially misleading statements.

66.     As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving or causing the materially deficient Recommendation Statement to

be disseminated to Plaintiff and the Company's other public shareholders.

67.     The misrepresentations and omissions in the Recommendation Statement are material, and Plaintiff will be deprived of his right to make an informed decision on whether to tender his shares if such misrepresentations and omissions are not corrected prior to the Expiration Time. Where a shareholder has been denied one of the most critical rights he possesses—the right to make a fully informed decision—the harm suffered is an individual and irreparable harm.

68.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Tender Offer or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Recommendation Statement;

B.     Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 28, 2020              **MONTEVERDE & ASSOCIATES PC**

By: *  /s/ Juan E. Monteverde         *
            Juan E. Monteverde (JM-8169)
            The Empire State Building
            350 Fifth Avenue, Suite 4405
            New York, NY 10118
            Tel:(212) 971-1341
            Fax:(212) 202-7880
            Email: jmonteverde@monteverdelaw.com

            *Attorneys for Plaintiff*